# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MICHAEL WRIGHT, AS NEXT FRIEND OF HIS MINOR CHILD, B.W. <br><br> v. <br><br> DENISON INDEPENDENT SCHOOL DISTRICT, ET AL. | § <br> § <br> § Civil Action No. 4:16-CV-615 <br> § (Judge Mazzant/Judge Nowak) <br> § <br> § <br> § |

## MEMORANDUM ADOPTING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On April 19, 2017, the report of the Magistrate Judge (Dkt. #36) was entered containing proposed findings of fact and recommendations that Defendant Denison Independent School District's Motion to Dismiss Plaintiff's Complaint (Dkt. #9) be denied and that Defendants Charles Bollinger's, Chad Rogers's, Henry Scott's, and David Kirkbride's Motion to Dismiss Plaintiff's Complaint (Dkt. #10) be granted in part and denied in part. Having received the report and recommendation of the Magistrate Judge (Dkt. #36), having considered Plaintiff Michael Wright, as next friend of his minor child, B.W.'s objections (Dkt. #38) and Defendants' response thereto (Dkt. #39), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. The Court adopts the Magistrate Judge's report (Dkt. #36) in part and rejects it in part as set forth below.

## RELEVANT BACKGROUND

The Court sets forth herein only those facts pertinent to Plaintiff's objections. Plaintiff filed this lawsuit as next friend of his minor son, B.W., on August 17, 2016, asserting claims against Defendants Denison Independent School District ("DISD"), Charles Bollinger (a baseball

coach at Denison High School), Chad Rogers (athletic director at Denison High School), Henry Scott (DISD superintendent), and David Kirkbride (DISD assistant superintendent) (Bollinger, Rogers, Scott, and Kirkbride are hereinafter and collectively referred to as the "Individual Defendants"). Plaintiff alleges Bollinger made inappropriate sexual comments about B.W.'s mother to B.W. in front of others on several occasions while B.W. was at school, and that Bollinger also encouraged B.W. to cheat while playing baseball for DISD. B.W. refused to cheat and then, along with his parents, reported Bollinger's sexual comments and cheating directives to Scott. Plaintiff claims that, after B.W. (and B.W.'s parents) reported Bollinger to Superintendent Scott (who relayed the reports to Athletic Director Rogers), DISD failed to act to ameliorate B.W.'s situation. Indeed, Plaintiff alleges DISD never took corrective action against Bollinger, who retaliated against B.W. by benching B.W. "without cause or explanation" and announcing to other members of the team B.W. would be benched. B.W. and his parents met with Rogers about Bollinger's treatment of B.W. several times to no avail before also meeting with Scott and Kirkbride. At the meeting with Scott and Kirkbride, Plaintiff alleges Scott warned Plaintiff "that B.W. would be kicked out of the baseball program for causing 'this mess with the coach' if 'things didn't change'" and that, when asked, clarified that B.W. would be removed from the baseball team if Plaintiff did not drop the allegations regarding Bollinger's treatment of B.W. At the end-of-season athletics banquet, B.W. received no recognition for his performance as pitcher for the DISD team (Dkt. #30 at 3-7).

Plaintiff raises four distinct claims by and through his suit. First, Plaintiff claims the Individual Defendants acted pursuant to a "de facto policy" in violating B.W.'s constitutional rights, rendering DISD liable under 42 U.S.C. § 1983 via *Monell*. Plaintiff asserts DISD is liable (A) for failing to "take[] steps to meaningfully investigate" Bollinger's treatment of B.W. and the

2

other Individual Defendants' unsatisfying responses to Bollinger's actions and (B) for failing to "effectively train[]" the Individual Defendants to respond to such behavior (Dkt. #30 at 7-8). Further, Plaintiff claims such "actions and omissions . . . were deliberate and intentional" (Dkt. #30 at 8). Plaintiff alleges "policy makers, including Defendant Bollinger" chose to engage in these unlawful acts, but notable herein Plaintiff's live pleading does not allege any involvement on the part of DISD's Board of Trustees (*see* Dkt. #30 *passim*). Second, Plaintiff claims DISD and the Individual Defendants retaliated against him for engaging in activity protected by the first amendment, namely for his complaints to Rogers, Scott, and Kirkbride regarding Bollinger's conduct (Dkt. #30 at 8-12). Third, Plaintiff asserts substantive due process and equal protection violations under the fourteenth amendment on the part of DISD and the Individual Defendants (both in their individual and official capacities), arguing that "B.W.'s opportunity to participate in the baseball program through DISD education program is a liberty interest" Defendants took from B.W. and further that Defendants harmed B.W.'s reputation through their actions (Dkt. #30 at 12-15). Fourth, Plaintiff claims the Individual Defendants in their individual capacities harmed B.W. through intentional infliction of emotional distress (Dkt. #30 at 15-17).

On April 19 ,2017, the Magistrate Judge entered a report and recommendation (Dkt. #36), recommending that DISD's Motion (Dkt. #9) be granted and that the Individual Defendants' Motion to Dismiss (Dkt. #10) be granted in part and denied in part. Plaintiff filed his objections to the report and recommendation on May 4, 2017 (Dkt. #38), and Defendants filed their response to Plaintiff's objections on May 17, 2017 (Dkt. #39).

**PLAINTIFF'S OBJECTIONS**

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which

the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). The Magistrate Judge's report concluded first that Plaintiff's claims against DISD and the Individual Defendants in their official capacities under 42 U.S.C. § 1983 should be dismissed for Plaintiff's failure to allege he suffered harm as the result of a "policy" crafted or endorsed by the DISD Board of Trustees. Specifically, the Magistrate Judge found "the Amended Complaint does not allege that any custom or policy at issue was ever presented to and/or approved by the [DISD Board], or that the [DISD Board] had any knowledge of Plaintiff's complaints or any 'custom' of ignoring these complaints" (Dkt. #36 at 8-12). Second, the Magistrate Judge found as follows regarding Plaintiff's claims against the Individual Defendants in their individual capacities under 42 U.S.C. § 1983: (a) Plaintiff's substantive due process claims should be dismissed because Plaintiff failed to allege a cognizable right protected by the fourteenth amendment (Dkt. #36 at 12-15); (b) Plaintiff's claims of first amendment retaliation should survive dismissal (Dkt. #36 at 15-21); and (c) Plaintiff's equal protection claims should be dismissed (to the extent he asserts any at all) because the Amended Complaint "is devoid of any facts to support such claim" (Dkt. #36 at 21-23). Finally, the Magistrate Judge found Plaintiff's intentional infliction of emotional distress claims should be dismissed because Texas statutory law proscribes such claim against the Individual Defendants in their individual capacities under the circumstances and because DISD has immunity against such claim (Dkt. #36 at 23-26). Plaintiff specifically objects to the Magistrate Judge's first finding, in part, regarding his § 1983 claim against DISD and also to the Magistrate Judge's finding that Plaintiff failed to allege a cognizable due process right (Dkt. #38). Neither party objects to the Magistrate Judge's findings that Plaintiff's § 1983 equal protection claims against the Individual Defendants in their official capacities (and against Individual Defendants in their individual capacities, to the extent such is asserted) should be dismissed, that

Plaintiff's claims for intentional infliction of emotional distress should be dismissed, or that Plaintiff's first amendment retaliation claims should survive the Motions to Dismiss (*see* Dkt. #38).. As such, the Court adopts these findings and proceeds to evaluate only Plaintiff's claims against DISD under § 1983 and Plaintiff's substantive due process claims under § 1983 against the Individual Defendants in their individual capacities.

*Objection 1: DISD (***Monell***) Liability*

Plaintiff objects to the Magistrate Judge's finding that Plaintiff fails to state a claim against DISD because Plaintiff fails to allege in the Amended Complaint "any custom or policy . . . was ever presented to and/or approved by the [DISD Board], or that the [DISD Board] had any knowledge of Plaintiff's complaints or any 'custom' of ignoring these complaints." Plaintiff argues the Magistrate Judge applies the wrong standard for municipal liability and that the Amended Complaint meets the proper standard for pleading municipal liability (Dkt. #38 at 3-6). Specifically, Plaintiff claims "boilerplate" allegations of an unconstitutional municipal (here, school board) policy will suffice to state a claim under *Monell*, and that the allegations contained in the Amended Complaint meet this threshold (Dkt. #38 at 3-6). Plaintiff also alleges for the first time in his objections that he "emailed each board member a full, detailed account just days before Defendants Scott and Kirkbride requested the meeting where they threatened to 'kick [B.W.] out' for 'this mess with the coach'" (Dkt. #38 at 5 & n.3). Defendants assert there is a split of authority regarding the proper pleading standard for municipal liability but that, in any event, the Fifth Circuit has in *G.M. v. Shelton*, 595 F. App'x 262 (5th Cir. 2014), upheld dismissal at the motion to dismiss stage of similar claims couched in nearly identical pleadings (Dkt. #39 at 2-5). Further, Defendants contend the Court should disregard Plaintiff's new allegations concerning the email he purportedly sent to the DISD Board prior to the Scott/Kirkbride meeting; Defendants point out that the Magistrate Judge afforded Plaintiff an opportunity to amend his complaint prior to ruling

5

on the Motions to Dismiss and yet Plaintiff failed to include within the Amended Complaint any allegation regarding the email (Dkt. #39 at 5 n.15).

As an initial matter, the Magistrate Judge correctly summarized the standards governing municipal liability (*see* Dkt. #36 at 8-10). A plaintiff may make no claim of *respondeat superior* under § 1983 against a government entity. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, a plaintiff must show the government entity "*itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95). The Fifth Circuit has required as a result that a plaintiff must establish the entity's "official policy" caused the plaintiff's harm. *Deville*, 567 F.3d at 170. The Fifth Circuit has explained that an "[o]fficial policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). A plaintiff must "specifically identif[y]" the alleged policy, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001), and, where alleging "policy based on a pattern," must show the "pattern . . . occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected, accepted practice of . . . employees[,]" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). Such "policy" must derive from the government entity's recognized policy maker, such as a school's board of trustees. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-48 (5th Cir. 2003) (noting that under Texas law,

6

a school's board of trustees has sole policy-making authority); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (same). This ensures plaintiffs do not saddle government entities with vicarious liability for the actions of its agents not in accord with policy. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997) ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.").

Part-and-parcel of a court's obligation to avoid subjecting a government entity to *respondeat superior* liability under § 1983 is the court's responsibility to screen pleadings for sufficiency under the *Twombly* and *Iqbal* standard for pleading sufficiency. *See Gonzales v. Nueces Cty.*, --- F. Supp. 3d ---, 2017 WL 40338, at *3 (S.D. Tex. Jan. 4, 2017) (noting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination* Unit, 507 U.S. 163 (1993) held "the pleading of a § 1983/*Monell* case is governed by Rule 8, which at the time was treated as a notice pleading standard" but which is now governed by "the *Twombly*/*Iqbal* factual plausibility standard"). District courts in this circuit (and elsewhere) have disagreed about the implication of *Twombly* and *Iqbal* on the pleading standard for municipal liability:

> Some courts have allowed generic or boilerplate assertions of the grounds for holding the municipality liable. *See, e.g., Charles v. Galliano,* 2010 WL 3430519, at *6 (E.D.La. Aug. 26, 2010) ("Boilerplate allegations of inadequate municipal policies or customs are generally sufficient."); *Dwyer v. City of Corinth,* 2009 WL 3856989, at *9 (E.D.Tex. Nov. 17, 2009) (same); *Abdulkhalik v. City of San Diego,* 2009 WL 4282004, at *10 (S.D.Cal. Nov. 25, 2009) ("A plaintiff has alleged sufficient facts to assert a *Monell* claim even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'") (citation omitted); *Gearin v. Rabbett,* 2011 WL 317728, at *9 (D.Minn. Jan. 28, 2011) ("In this Court's view, Gearin's allegations fall far short of the pleading standards of [*Twombly* and *Iqbal*]. But . . . *Leatherman* rejected any heightened pleading requirement for *Monell* claims, and it was apparently sufficient for the *Leatherman* plaintiff merely to allege inadequate training—without specifying what was inadequate about the training or who was responsible for those inadequacies.").

> Other courts have treated *Twombly* and *Iqbal* as dramatically altering the pleading requirements for municipal liability claims. *See, e.g., Wright v. City of Dallas,* 2010 WL 3290995, at *2–4 (N.D.Tex. July 19, 2010) (applying *Iqbal* to dismiss claim against city due to insufficient factual support); *Hutchison v. Metropolitan Government of Nashville and Davidson, County,* 685 F.Supp.2d 747, 752 (M.D.Tenn.2010) ("Although Plaintiff's Amended Complaint cannot survive the Motion to Dismiss after *Iqbal,* the Court must note that it is uncomfortable with this pleading standard as now applied, especially in the context of Section 1983 and municipal liability."); *Young v. City of Visalia,* 687 F.Supp.2d 1141, 1149 (E.D.Cal.2009) ("In light of *Iqbal,* it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable."); *Smith v. District of Columbia,* 674 F.Supp.2d 209, 213 n. 2 (D.D.C.2009) ("To be sure, the D.C. Circuit previously held that a plaintiff need only plead that a municipality ' "knew or should have known" about the ongoing constitutional violations' to sustain a claim for *Monell* liability predicated on deliberate indifference. But *Warren* [*v. District of Columbia,* 353 F.3d 36 (D.C.Cir.2004) ] preceded *Iqbal,* and must now be interpreted in light of that subsequent Supreme Court decision. Under *Iqbal,* such conclusory pleadings are no longer sufficient to state a claim on which relief may be granted.").

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011).

In the Court's view, generic assertions of municipal liability will not suffice. The cases permitting such "boilerplate assertions" of a policy and/or a policymaker's involvement rely on pre-*Twombly* and *Iqbal* authorities, and on the (now defunct) concept that federal pleadings should merely provide the defendant general notice of the claims raised against it, even if those pleadings "are formulaic"—read "boilerplate." *See Gonzales*, 2017 WL 40338, at *3 (collecting and analyzing cases). Even considering "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedure prior to discovery" when suing a government entity under § 1983, "*Leatherman* and *Iqbal* may be reconciled, without allowing boilerplate allegations, on the one hand, or requiring plaintiff to plead specific factual details to which they do not have access . . . , on the other." *Thomas*, 800 F. Supp. 2d. at 842. Indeed, plaintiffs suing a government entity and claiming some policy of the entity harmed them should be able to muster allegations of "past

8

incidents of misconduct to others, multiple harms that occurred to the plaintiff[s] [themselves], misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy" in order to comply with *Twombly* and *Iqbal*. *Id.* at 842-43 (noting "[t]hose types of details, or any other minimal elaboration a plaintiff can provide, help to 'satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests,' . . . , and also to 'permit the court to infer more than the mere possibility of misconduct'").

The Magistrate Judge applied the *Twombly* and *Iqbal* standards in the instant case and correctly concluded the Amended Complaint fails to allege that a DISD policy and/or "persistent, widespread practice" harmed Plaintiff (*see* Dkt. #36 at 4-6, 8-12). The Amended Complaint certainly alleges "multiple harms that occurred to [Plaintiff] himself"—Bollinger's mistreatment of B.W. on various occasions as well as the several meetings wherein Defendants allegedly ignored or downplayed Plaintiff's complaints—"misconduct that occurred in the open"—Bollinger's treatment of B.W. in front of other players—and "the involvement of multiple officials in the misconduct"—namely Scott's and Kirkbride's apparent complicity with Bollinger's treatment of B.W. (*see* Dkt. #30 at 3-8). And such allegations suffice (read in a light most favorable to Plaintiff) to show Plaintiff may have suffered harm at the hands of DISD employees. But what the Amended Complaint fails to show is a nexus between that misconduct and the sole policymaker for DISD, the DISD Board. The Amended Complaint contains *no* allegation that the DISD Board participated in or condoned the misconduct Plaintiff alleges harmed him (*see* Dkt. #30 *passim*). Absent factual allegations tying the DISD Board to the misconduct vis-à-vis a "policy" it created— either formally through a rulemaking process or informally through its complicity in the

misconduct on multiple occasions—Plaintiff's Amended Complaint fails sufficiently to allege DISD violated § 1983 under *Monell*.

Notwithstanding that the Amended Complaint fails sufficiently to allege DISD violated § 1983, Plaintiff asserts for the first time in his objections that he "emailed each board member a full, detailed account" of Bollinger's alleged mistreatment of B.W. "just days before Defendants Scott and Kirkbride requested the meeting where they threatened to 'kick [B.W.] out' for 'this mess with the coach'" (*see* Dkt. #38 at 5). Plaintiff claims that, considering the email and the timing of the Scott/Kirkbride meeting, "there is at least an inference that the direction came from the [DISD Board] itself" (Dkt. #38 at 5), and indicates that he will "supplement his Amended Complaint with a printout of the email and, if necessary, further amend his claim" to incorporate these facts (Dkt. #36 at 5 n.3). Although Plaintiff does not explain why he only now makes these allegations, "motion[s] to dismiss under 12(b)(6) '[are] viewed with disfavor and [are] rarely granted'" in the Fifth Circuit. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir.2009)). Further, construing the facts in a light most favorable to Plaintiff, Plaintiff's allegations concerning the email, if Plaintiff is permitted to amend to more fully expand on its contents, may suffice to show the DISD Board knew of Bollinger's repeated misconduct and at least of Rogers's failure to respond appropriately to that misconduct. *See, e.g.*, *Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 643-43 (W.D. Tex. 2013) (finding plaintiffs' presentation of a grievance to the school's board of trustees where plaintiffs "claim[ed] that they described . . . the same incidents that they allege in [their complaint]" was sufficient to show the school's board had knowledge of the impermissible treatment of plaintiffs); *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004) ("For example, if a school board-a policymaker under *Monell*-approves a superintendent's decision to

10

transfer an outspoken teacher, knowing of the superintendent's retaliatory motive for doing so, the governmental entity itself may be liable; but if the school board lacks such awareness of the basis for the decision, it has not ratified the illegality and so the district itself is not liable."); *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) ("Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983. Thus, for municipal liability to attach under section 1983 a plaintiff must demonstrate "[a]ctual or constructive knowledge of such custom . . . attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."). As such, the Court finds leave to further amend appropriate under the circumstances. *See Truong v. Alief Indep. Sch. Dist.*, No. CV H-16-00427, 2016 WL 6680930, at *4 (S.D. Tex. Nov. 14, 2016) (permitting plaintiff leave to file a second amended complaint in order to allege facts that would implicate the school board policymaker in the alleged wrongdoing so as to make *Monell* claim against the school district). Accordingly, though the Magistrate Judge's recommendation is correct as to the existing Amended Complaint, the Court will reject dismissal of Plaintiff's claims against DISD at this juncture and permit Plaintiff leave to amend so as to incorporate his allegations about the email to the DISD Board.

*Objection 2:   Substantive Due Process Claim*

Plaintiff also objects to the Magistrate Judge's finding that Plaintiff fails to state a claim for due process violations (Dkt. #38 at 6-7). Plaintiff argues the case on which the Magistrate Judge relied in concluding Plaintiff's alleged liberty interest does not constitute a recognized liberty interest under the fourteenth amendment, *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997), is inapposite factually and, therefore, inapplicable here (Dkt. #38 at 7). Plaintiff also asserts he does not "attempt to 'carve out a component of the educational

process, mask it with the trappings of a fundamental right and then elevate that component to the status of a fundamental right" seemingly to clarify he does not allege that Defendants deprived him of the opportunity to play baseball or engage in an extracurricular activity, but rather that Defendants deprived him of a public education (Dkt. #38 at 7). Defendants argue the Magistrate Judge correctly determined "Plaintiff's allegations do not give rise to a protected property or liberty interest" under the fourteenth amendment, and further that "there are no allegations that Defendants removed B.W. from school or even his baseball class" at all, much less in any manner that could implicate "the only protected interest [to which] B.W. has a right"—i.e. to "a public education" (Dkt. #39 at 6-7).

The Court agrees with the Magistrate Judge and with Defendants: Plaintiff fails to allege Defendants violated a protected liberty interest here. The Fifth Circuit opined in *Nevares*:

> We have previously held that ***no protected property interest is implicated in a school's denial to offer a student a particular curriculum***. In *Arundar,* a high school student had claimed that her property right to education was implicated when she was denied enrollment in certain courses of study. We affirmed the district court's dismissal of the case and held that although state law could create a protected interest in a particular kind of education, for example by mandating special education for exceptional children, absent such a basis in state law, there was no cause of action. This ***court has also rejected arguments that there is any protected interest in the separate components of the educational process, such as participation in interscholastic athletics***.

111 F.3d at 27 (emphasis added). Plaintiff argues that "Defendants did not merely dampen B.W.'s athletics but unfairly and impermissibly interfered with B.W.'s education" given that "B.W. has been enrolled in baseball as a class that is part of his regular school-day curriculum since the beginning of his high school education" (Dkt. #38 at 6). Further, Plaintiff asserts, unlike the plaintiff in *Nevares*, "B.W.'s conduct in speaking out against the wrongful and retaliatory actions taken against him was admirable and brave, which is where the 'well-settled' cases cited by the R&R diverges" (Dkt. #38 at 7). Plaintiff's arguments wholly fail to combat the Magistrate Judge's

reasoning, which relies on *Nevares* not for its factual application, but for its exposition of the applicable legal standard (Dkt. #36 at 13-14). *Nevares* makes clear Plaintiff has no protected interest in participating in "a particular curriculum"—such as enrollment in a baseball class—or "in the separate components of the educational process"—such as B.W.'s participation in the baseball team as an extracurricular activity. 111 F.3d at 27. Plaintiff does not allege Defendants kept B.W. from attending public school or even from enrolling in the baseball class (or any other class). The Court agrees that, "[a]t most," Plaintiff's allegations amount to a "loss of a mere expectation to continue playing a starting position on the varsity baseball team[,]" and such does not constitute a protected liberty interest in a public education under the relevant authorities. The Court overrules Plaintiff's second objection.

## CONCLUSION

Having considered each of Plaintiff's timely filed objections (Dkt. #38) and Defendants' response thereto (Dkt. #39), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #36) as the findings and conclusions of the Court. The Court, however, permits Plaintiff leave to amend the Amended Complaint so as to incorporate his allegations about the email to the DISD Board.

Accordingly, it is **ORDERED** that Defendant Denison Independent School District's Motion to Dismiss Plaintiff's Complaint (Dkt. #9) is **GRANTED IN PART AND DENIED IN PART**, and that each of Plaintiff's claims against DISD, apart from his claims for first amendment retaliation under *Monell*, are hereby dismissed. Plaintiff shall be afforded leave to amend his Amended Complaint (Dkt. #30) so as to more fully set out his allegations regarding the email he sent to the DISD Board.

It is further **ORDERED** that Defendants Charles Bollinger's, Chad Rogers's, Henry Scott's, and David Kirkbride's Motion to Dismiss Plaintiff's Complaint (Dkt. #10) is **GRANTED IN PART AND DENIED IN PART**. Specifically, as to Plaintiff's Due Process, Equal Protection, and intentional infliction of emotional distress claims against the Individual Defendants, the Individual Defendants' Motion is **GRANTED**, and as to Plaintiff's claims of First Amendment retaliation against the Individual Defendants, the Individual Defendants' Motion is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 24th day of May, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE